**Alfredo M. Morales, Esq. [SBN 69204]**
Law Offices of Morales & Leaños
75 East Santa Clara Street, Suite 250
San José, CA  95113
(408) 294-5400

Counsel for Jose Torres-Calderon

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR 07-00745-01  JF |
| | ) | |
| Plaintiff, | ) | **SUPPLEMENTAL** |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSE TORRES-CALDERON, | ) | Date    : 07-17-08 |
| | ) | Time   : 9:00 a.m. |
| Defendant. | ) | Judge  : Hon. Jeremy Fogel |
| | ) | |

### Introduction

Jose Torres-Calderon entered a plea of guilty to a single count information filed on November 27, 2007 alleging a violation of 8 U.S.C. §1326 – Illegal Re-Entry Following Deportation.  Mr. Torres-Calderon pled open and not pursuant to any plea agreement on April 16, 2008.

The Government contends that the defendant's offense level should be increased pursuant to USSG §2L1.2(b)(1)(A)(i) which provides for a 16 level increase where a defendant has sustained a felony "drug trafficking" conviction for which a sentence in excess of 13 months was imposed or  USSG §2L1.2(b)(1)(B) which provides for an 8 level increase where a defendant has sustained a conviction for an "aggravated felony." This position  is based on a California Health and Safety Code §11352 conviction suffered by the defendant in 1992.

===============================================================================

1    The defense submits that Government has not met its burden to establish that the alleged

2    subject conviction is either a "drug trafficking offense" or an "aggravated felony" and further,

3    assuming this burden has been met, the principle's enunciated in *Apprendi v. New Jersey*, 530

4    U.S. 466 (2000) prohibit the Court from imposing the subject enhancements.

5    The defense also submits that Criminal History Category VI over represents his criminal

6    history and that Criminal History Category IV best represents his criminal history.

7    Finally the defense believes that departures are warranted based primarily on "sentencing

8    disparity."

9    **Base Offense Level Calculation**:

10    **Specific Offense Characteristic**

11    The application of USSG §2L1.2(b)(1)(A)(i) and (B) for the subject drug conviction is

12    inappropriate for three reasons: First, in determining whether a prior conviction should be

13    considered an "aggravated felony" or "drug trafficking" offense for federal sentencing purposes

14    the analytical model constructed by the Supreme Court in *Taylor v. United States*, 495 U.S. 575

15    (1990) should be employed. Under this approach the court may not look to the underlying facts

16    of the prior offense. The court may only look to the fact of conviction and the statutory definition

17    of the prior offense. [*United States v. Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir.2004).]   As

18    the Government recognizes, Ninth Circuit cases applying *Taylor's* categorical analysis have

19    concluded that California Health and Safety Code § 11352 does not constitute either a "drug

20    trafficking" offense or "aggravated felony." [See Gov't Sentence Memo, p.3:18-20*;  United*

21    *States v. Rivera-Sanchez,* 247 F.3d 905, 909 (9th Cir. 2001) and  *United States v. Navidad-*

22    *Marcos*, 367 F.3d 903, 908 (9th Cir.2004).]

23    For this reason the Government seeks to establish that the subject conviction constitutes a

24    qualified  "drug trafficking" offense by employing the "modified categorical approach" endorsed

25    in *Taylor v. United States*, 495 U.S. 575 (1990) Under the modified categorical approach a court

26    may examine "documentation or judicially noticeable facts that clearly establish that the

27    conviction is a predicate conviction for enhancement purposes." [*United States v. Corona-*

28    ====================================================================================================

1 *Sanchez*, 291 F.3d 1201, 1203 (9th Cir.2002).] The purpose of employing the modified

2 categorical approach is to determine if the record "unequivocally" establishes that the defendant

3 was convicted of a qualified predicate offense even if the penal statute in question is over

4 inclusive. [*United States v. Velasco-Medina*, 305 F.3d 839, 851(9th Cir.2002); *United States v.*

5 *Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir.2002).] It is the Government's burden to clearly

6 and unequivocally establish that the conviction is a qualified predicate offense. Further the

7 documents used to satisfy a modified categorical analysis must meet a "rigorous standard.

8 [*United States v. Sandoval-Venegas*, 292 F.3d 1101, 1106 (9th Cir. 2002).] (1990) Accordingly,

9 absent evidence that permits a determination that the subject conviction constitutes a "drug

10 trafficking" offense or "aggravated felony" these characterizations of the alleged subject offense

11 should be rejected.

12   Attached to the Government's Sentencing Memorandum is an abstract of judgment and a

13 minute order to establish that Mr. Torres-Calderon was convicted of a predicate offense. [See

14 Gov't Exhibits B and C.] Neither document is sufficient to establish this claim. An abstract of

15 judgment is not sufficient to establish "unequivocally" that Mr. Torres-Calderon was convicted

16 of a "drug trafficking offense." [*United States v. Navidad-Marcos*, 367 F.3d 903, 909 (9th

17 Cir.2004), where the trial court relied solely on an abstract of judgment.] As was stated in *United*

18 *States v. Navidad-Marcos*:

19   Under California law, as the Supreme Court of California has recently reminded
  us: "An abstract of judgment is not the judgment of conviction; it does not control
20   if different from the trial court's oral judgment and may not add to or modify the
  judgment it purports to digest or summarize." [Citations Omitted] Preparation of
21   the abstract of criminal judgment in California is a clerical, not a judicial
  function.[Citations Omitted] Indeed, in California, "appellate courts routinely
22   grant requests on appeal of the Attorney General to correct errors in the abstract of
  judgment." [Citations Omitted] Under California law, the form of the abstract of
23   judgment is promulgated by the Judicial Council of California. [Citations
  Omitted] The form simply calls for the identification of the statute of conviction
24   and the crime, and provides a very small space in which to type the description. It
  does not contain information as to the criminal acts to which the defendant
25   unequivocally admitted in a plea colloquy before the court. [*Untied States v.*
  *Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir.2004).]

26

27 The Government has also attached a minute order to support the claim that the subject conviction

28 constitutes a "drug trafficking offense." The minute order is also insufficient in that, like the

1    abstract of judgment it's preparation is a clerical function, not a judicial function.

2         The Ninth Circuit has identified several kinds of documents and judicially noticeable

3    facts that courts may consider under the modified categorical approach to determine whether a

4    conviction is a predicate conviction for enhancement purposes, to wit: the indictment, the

5    judgment of conviction, jury instructions, a signed guilty plea, and the transcript of the plea

6    proceedings. [*United States v. Contreras-Salas*, 387 F.3d 1095, 1097-1098 (9th Cir. 2004).] The

7    Government also attached copies of the charging documents to its Sentencing Memorandum [See

8    Gov't Exhibit A.]; however, these document merely tell us what charges were filed. It does not

9    establish any charges of which the defendant was convicted.

10        By reason of the foregoing, the defense contends that the Government has not met its

11   burden of to clearly and unequivocally establishing that the conviction is a qualified predicate

12   offense.

13        Second, the subject conviction cannot be used to support the USSG §2L1.2(b)(1)(A)(i)

14   and (B) enhancements if the fact of the conviction is not admitted or proven to a jury beyond a

15   reasonable doubt. [See *Shepard v. United States*, 544 U.S. 13 (2005);*Apprendi v. New Jersey*,

16   530 U.S. 466 (2000).] Counsel is aware of *Almendariz -Torrez v. United States*, 523 U.S. 224

17   (1998) as it pertains to the issue of the use of prior convictions, but contends that *Shepard* and

18   *Apprendi* effectively overrule *Almendarez-Torres* or at least create constitutional doubt as to its

19   continuing validity. [*"Almendarez-Torres*, ... , has been eroded by this Court's subsequent *Sixth*

20   *Amendment* jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres*

21   was wrongly decided." *Shepard v. United States*, 544 U.S. 13, 27 (2005) (conc.opn. of Thomas,

22   J.)]

23        Third, based on an *Apprendi* he Ninth Circuit recently concluded that the dates of a

24   previous felony conviction and of a previous removal from the United States, subsequent to that

25   conviction, must be alleged in the indictment and proved to a jury for the defendant to be subject

26   to an increased sentence under *8 U.S.C. § 1326(b)*. [*United States v. Salazar-Lopez*, 506 F.3d

27   748, 749-750 (9th Cir.2007).] In so holding, the Court reasoned that the fact that triggered the

28   ===================================================================

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

1  statutory maximum of §1326(b) was the sequence of prior conviction and the defendant's two

2  removals, not the mere fact of the prior conviction: "As such, the date of the removal, or at least

3  the fact that Salazar-Lopez had been removed after his conviction, should have been alleged in

4  the indictment and proved to the jury.  The failure to due so was an *Apprendi* error." [*Id.* at 752 .]

5  The information in the instant case alleges three different dates of removal but does not allege the

6  temporal relationship between any of the three removals and the subject alleged predicate

7  conviction, and therefore implicates the *Apprendi* error recognized in *Salazar-Lopez*.

8      Accordingly, absent "unequivocal"proof of a predicate conviction for any enhancement

9  under the guidelines and in view of the *Apprendi* errors discussed herein, the correct Total

10  Offense Level is 6 (Base Offense Level of 8 minus 2 for Acceptance of Responsibility).

11                        **Criminal History Calculation**

12      **A Departure is Warranted Under USSG §4A1.3**

13      The defense submits that the Criminal History Category VI over represents the

14  seriousness of the defendant's criminal history.  Defendant's most serious conviction took place

15  fifteen years ago, in 1992.  Five misdemeanor convictions stem from the fact that he was driving

16  with a suspended license and little else. In regards to the suspended license charges it should be

17  noted that Mr. Torres-Calderon can not get a valid California license due to his immigration

18  status and so cannot remedy his license status. One could reply that he simply should avoid

19  driving, but this is not a realistic resolution given the transit system in the Bay Area. Two of the

20  five suspended license charges per the PSR calculations resulted in six criminal history points.

21  [See PSR, *Paragraphs 31, 34* and *40*.]  Further, the only other drug related conviction is based

22  on possession and under the influence conduct which is far less serious than the drug offense

23  which resulted in a prison sentence.

24      Given the totality of the circumstances, the defense contends that Criminal History

25  Category IV best represents the seriousness of this defendant's criminal history. [§4A1.3(b)(1)]

26                    **Discussion of 18 U.S.C. §3553(a) Factors**

27      Under *United States v. Booker,* 543 U.S. 220 (2005), it is clear that the courts may no

28  ================================================================================

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

1   longer uncritically apply the guidelines. In every case, a sentencing court must now consider <u>all</u>

2   of the 18 U.S.C. §3553(a) factors, not just the guidelines, in determining a sentence that is

3   sufficient but not greater than necessary to meet the goals of sentencing. And where the

4   guidelines conflict with other sentencing factors set forth in 3553(a), these statutory sentencing

5   factors should generally trump the guidelines. See *United States v. Denardi,* 892 F.2d 269, 276-

6   77 (3d Cir. 1989)

7        Of the several 3553(a) factors that the Court must consider, several merit discussion here.

8   As regards the nature and circumstances of the offense [3553(a)(1)] the defense points out that

9   the crime of unlawful reentry in and of itself does not cause harm to person or property. It is

10  designed to protect our borders from people who are deemed undesirable, but who nevertheless

11  return primarily due to the economic conditions they find in their own country. The history and

12  characteristics of Mr. Torres-Calderon probably does not create a lot of sympathy considering his

13  criminal history, however, he like others found himself in a position where he felt he had no

14  other realistic choice. It was either stay in Mexico and starve, or take the risks of criminal

15  prosecution and have a better chance of surviving in the United States.

16       Regarding the need for the sentence imposed to reflect the seriousness of the offense, to

17  promote respect for the law, to provide just punishment for the offense, to afford adequate

18  deterrence to criminal conduct and to protect the public from further crimes of the defendant.

19  [3553(a)(2)(A), (B) and (C)],  it comes down to how much incarceration will accomplish these

20  goals. The defense concedes that a minimal to moderate period of incarceration will satisfy these

21  specific goals, however a lengthy period of incarceration simply does not appear to appropriate

22  for this type of crime. As regards providing the defendant with needed educational or vocational

23  training, medical care, or other correctional treatment in the most effective manner

[3553(a)(2)(D)] it appears that he may not qualify for the type of programs that will assist him, such as a drug program that will assist him with his admitted addiction.

Counsel also contends that in this case the issue of "*sentence disparity*" [3553(a)(6)] should be carefully considered in determining a sentence that is sufficient, but not greater than necessary to comply with the statutory directions set forth in 18 U.S.C. §3553(a).

### A Variance is Warranted to Avoid Sentencing Disparities

The Government argues that the appropriate guideline range for imprisonment is 77 to 96 months, based on a total offense level of 21 and Criminal History Category of VI. The Fast Track offer in this case was 37 months. The low end of the guideline calculation as argued by the Government is more than double the Fast Track offer. It seems apparent that most defendants in the position of Mr. Torres-Calderon would receive a lesser sentence because of a Fast-Track agreement. Thus the a sentence of 77 months does not reflect the sentences of defendants who committed similar crimes and have similar records to Mr. Torres-Calderon. Under these circumstances the need to avoid unwarranted sentence disparities among defendants with similar records should be considered. [18 U.S.C. §3553(a)(6)]

It is correct that Mr. Torres-Calderon chose not to accept the Fast-Track offer and instead chose to plead open and keep his right to argue for a lesser sentence and to appeal. The factors that influenced his decision are well known to all defense attorneys. Ignorance and distrust play a huge role. This is particularly true among defendants who are Mexican nationals facing 1326 prosecutions who have never been prosecuted federally do not understand and cannot accept that the federal system of prosecution is different from the state system and in many respects harsher. This lack of understanding contributes to the distrust of defense counsel, particularly when

defense counsel is court appointed. In the case of 1326 prosecutions ignorance and distrust is further fueled by the frustration felt by defendants who have just completed a state court sentence and cannot understand why their "mere presence" in this country constitutes a crime when from their perspective they have harmed no one. The Sentencing Guidelines are also huge barriers to the resolution of these cases because defendants find it unbelievable that they are being punished again for past crimes which in their view have already been paid for with incarceration. The common refrain by Mexican nationals is "*Ya pague por ese caso,*"meaning "I already paid for that crime."  So it is the case that defendants, particularly in 1326 cases, cannot accept the logic of accepting a Fast-Track offer even when confronted with the guideline exposure of an open plea or after trial. If this were not enough to impede resolutions of 1326 cases, there is also the fact that there are many "jail house attorneys" inside the main jail who do not hesitate to counsel their cell mates with tales based on their own sense of fairness, cases they only heard about and on an incomplete understanding of the facts and applicable law.

Setting aside the prudence of his decision, one must also consider the "benefits" that Mr. Torres-Calderon received by way of his open plea. One benefit is that he could argue for a lesser sentence. Another benefit is that he can appeal. In most cases, as here,  these two benefits are illusory. The reality is that the only one who really benefitted was the system. Both the government and court obtained a plea without the burden of a trial.

Except for retaining the right to appeal, there is little difference between what burden is placed on the judicial system by acceptance of a Fast-Track offer and an open plea. In both situations the end result is that there is an early resolution that avoids the expense of a trial. Certainly the fact that Mr. Torres-Calderon retained the right to argue for a lesser sentence

created only a minimal extra burden on the government and court.  No doubt the early plea here substantially satisfied whatever policies support the Fast-Track system.  If Mr. Torres-Calderon were to waive his right to appeal, then the differences between accepting the Fast Track offer and an open plea are virtually non-existent.

Defense counsel is advised that Mr. Torres-Calderon is prepared to waive his right to appeal.  Given the foregoing discussion and in particular the disparities between the Fast-Track offer and the Guideline range as argued by the Government it is submitted that a variance is justified here and that a sentence in line with the Fast-Track offer of 37 months would be appropriate and sufficient under the facts of this case.

**Two Other Grounds Warranting a Variance**

In addition to "sentencing disparity" the Court should also consider two other factors: (1) A deportable alien is subjected to harsher confinement as he is ineligible for access to the BOP's drug treatment, early release and community confinement programs that are otherwise available to the general population; and (2) this defendant will no doubt be deported after completing his sentence.

**Conclusion**

The defense requests that the Court find that the Government has not established that the alleged drug conviction does not constitute either a "drug trafficking" offense or "aggravated felony" within the meaning of USSG §2L1.2(b)(1)(A)(i) and (B). Assuming the Government did meet its burden than the Court should hold that application of the enhancements would violate the defendant's Sixth Amendment rights under *Apprendi*.

The defense also requests that the Court conclude that Criminal History Category VI over

1   represents the defendant's criminal history and that Criminal History Category IV best represents

2   the defendant's criminal history.

3           Finally, the defense requests that the Court depart from the Guideline calculations

4   proposed by the Government on the basis of : sentencing disparity; harsher treatment received by

5   alien prisoners; and the fact that the defendant will be deported.

6

7

8                                                Respectfully submitted,

9

10

11  Dated: July 15, 2008                    _____/s/_____
                                            Alfredo M. Morales, Esq.
12                                          Counsel for Defendant
                                            Jose Torres-Calderon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

=================================================================================

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**